The next case on our calendar is State of New York v. PVS Chemicals. Thank you, Troy. Good morning. Good morning, Your Honor. May it please the Court, Frederick Brody for the State. The party settlement resolved five areas of pollution at the site. For four of them, the settlement required remediation. At issue here is whether the State released PVS from all liability for the fifth area, existing groundwater and soil pollution, solely in exchange for conducting environmental tests. The answer is no. The settlement expressly provided, and the extrinsic evidence confirmed, that DEC did not give a full release in exchange for just testing the groundwater. Why would they have done that anyway? Why would they want the testing without the remediation? Exactly. Exactly. Instead, the State reserved its right to proceed against PVS for further groundwater and or soil-related measures once the test results were in. In holding otherwise, the magistrate judge fundamentally misconstrued the settlement, and the extrinsic evidence fully supports that conclusion. Let's look at the extrinsic evidence. The extrinsic evidence showed that when the settlement was negotiated, the data on groundwater conditions were in dispute. PVS disputed the accuracy of the State's groundwater data. That's on pages 1085 to 1086 of the joint appendix. PVS, in fact... Prior to the record, both parties conceded that the groundwater levels at the time the work plan was commissioned were elevated. Is that right? No, I don't think that's right, because if you look at page 1086 of the record, PVS claimed its own tests showed groundwater standards were not exceeded, and the State disputed whether PVS had tested the right aquifer. That's on page 777. And the State expressed concern to PVS over data gaps. That's on page 816. So whether there were contaminants and what those contaminants were and how much of them there were and where they were, that was all up in the air. I assume we're persuaded by your argument that you did reserve these rights. Why shouldn't the contract be under the settlement, which is a contract, be construed to expect you to act within a reasonable time? If I understand the record correctly, the last report on their testing was in 2003, and it was not until eight years later that you registered the site as requiring remedial action. So, I mean, I'm concerned about the length of time here, whether that's a reasonable exercise of the rights you claim you reserved. Well, certainly the extrinsic evidence shows PVS's own understanding. It's counsel acknowledged on page 857 of the joint appendix that the State is not bound by any time limit similar to those imposed upon PVS. That's in quotes. No, no, and I know PVS had strict time limits imposed on it, but I'm just asking you whether doesn't any contract, as part of its obligations of good faith and fair dealing, expect you to act within a reasonable time on your rights? Are you saying that you could have acted on a 2003 report 25 years later after the fact, 50 years later after the fact? No, I'm certainly not. So why 11 years? I'm sorry, it wasn't 11 years. Eight years. Six years. And if Your Honor looks at 24, page 2433 of the record. Hold on a second, it's a big record. 2433, PVS itself says the operative delay was six years. And the reason for that is it was in 2003 to 2010, so maybe a little six years plus a few months. 2010, we notify them. Now, what happens in the interim? Well, first of all, It seems like a long time. I mean, you know, you get a report in 2003. The settlement says conduct this test. It has to be done expeditiously. You get the report, and then you wait six years to do it, to tell them they have to take remedial action? Well, I would point out there that PVS has not made or preserved a latches argument, and they haven't shown any prejudice from the delay. We let them stay there. They're operating their business. They're not hurt in any way. And some of the delay was also due to the fact that the state waited until it got further data, new data, from the Buffalo River. And when they got the data from the Buffalo River, that showed the same contaminants that are in the PVS groundwater from the 2003 test are now in the Buffalo River in 2006. So now it's 2006 to 2010, and given the number of Superfund sites there are all around the state and DEC's burden and its right and discretion in enforcement, I don't think that's an excessive delay, four years. Were there negotiations in that period? I'm not sure if my recollection of the record is accurate to renegotiate parts of the consent decree. No, renegotiation starts in 2010 when we come back to them and we say, look, we need some remediation here on the existing soil and groundwater pollution. And then there is more back and forth, and that's all in the extrinsic evidence. There's a suggestion in the arguments that have been presented to us that the delay may have been explained in part by a change of law that made it easier for you to identify a need for remedial action by 2011 that you might not have been able to identify in 2003. I'd like to know if you agree with that. And if so, whether that lends any support to their argument that if you couldn't have sought remediation in 2003, on the conditions that they reported to you that you shouldn't be allowed to do so in 2011 based on a change in the law that they weren't aware of when they did their testing. I'd like to know your view on all of that. Well, certainly. Your Honor is correct. There was a change in the law before the change to make someone clean up hazardous waste. You had to show it was waste. You had to show it had come from a particular industrial process and was discarded. And that was a huge burden that one couldn't meet here. You couldn't have met that in 2004, for instance. Report 2003, the next year, could you not have sought remediation because of that concern you just identified? I think the change in the law, if I recall correctly, is 2003. So 2003 forward, we have the benefit of that change in the law. But, you know, up to 2003, we never know. We don't know today what industrial processes. But if that's so, then it wouldn't seem to have been the change in law that explains the delay for six years. I mean, that would be favorable to you. I mean, I understood this argument to suggest that, you know, they basically got hoodwinked by your delay. No, we did not hoodwink them. We reserved our rights. There was no time limit on the reservation of rights. The change in law takes us to 2003. The new Buffalo River tests, which link the groundwater contamination to the river, takes us to 2006, and then we come in in 2010. And, you know, if you've ever tried super fund enforcement, it's a tough business. And, you know, four years is not excessive. Thank you, counsel. You've reserved two minutes for rebuttal, I believe. Three minutes for rebuttal, counsel. May it please the Court. David Roach for PBS. Your Honors, I will address the points raised by the State, but I believe there's a threshold point here, and that is when this Court remanded to the magistrate five years ago to resolve the ambiguity the Court found, it indicated there were two reasonable interpretations, one favoring the State's interpretation, the other favoring ours. In the Anderson decision, Anderson v. Bessemer City,  this Court's J.A. apparel decision, this Court's decision in diesel props, all indicate that in such a situation, the issue for the district court is a question of fact, considering extrinsic evidence of the party's intent. Also, Anderson tells us that when the Court decides in favor of one party's interpretation as to the other, by definition, that's not a clearly erroneous determination, and Anderson suggests this Court isn't a trier of fact. But wasn't the district court expressing a view that New York had not presented a plausible interpretation of the consent decree? Wasn't that the basis for the district court's decision? Yes. Okay, well, hadn't this Court, I think Judge Parker was a member of the Court, that referred it for examination of the extrinsic evidence? Didn't this Court already hold that New York's interpretation of the consent decree was plausible? Oh, yes, most definitely. But that's where Anderson instructs that when a trier of fact determines one interpretation versus another, both being reasonable, that that isn't error. And you cited that yourself, Your Honor, in your dissent in Doe v. Pataki, that this Court isn't to substitute its judgment as a trier of fact. And for a very good reason. The magistrate below had this case essentially for 20 years. He's been through these arguments. He considered the extrinsic evidence subsequent to this Court's direction that he do so. It's a very large record, as the Court has noted. And now we're hearing an argument that's based on some factual issues, and quite frankly, I've been involved with this case from the outset of the client for 36 years. That's not, in fact, the context of the settlement, nor is it factually accurate. Well, tell me, this is what I'm skeptical about. Tell me why New York would agree to sign off on a consent decree that requires a study, but that does not require remediation after that study. It doesn't seem reasonable for the state to have done that. Well, Your Honor, that was originally their position, that we had to do a study, and then we had to remediate, et cetera. And our position was, how can you conclude the results of the study before you've even undertaken it? Right. But at the conclusion of the study, one would think that what is discovered would lead to remediation, wouldn't it? Well, it could, but that's where I would defer to Judge Rockne's point. We were under time limits to produce in 2002 and 2003 four quarterly reports. The state was under a time limit to tell us if there was something inadequate about those reports within 60 days of receipt. What is that time limit? It's right in the order on consent in the record. I wasn't sure. I mean, I'm looking in the reservation of rights, and I didn't see a time limit. It's before the reservation of rights, Your Honor. It's with respect to the site investigation, which was Exhibit A to the consent decree. Where do I look for that? I'm sorry, I don't have the particular page, but it's right at the outset. You're going to have to tell me where it is because I didn't see it. I thought that part of your problem here was that they originally wanted you to consent to study and remediation, and you were saying, how can we agree to remediation when we don't know what we're going to find? Exactly. And they agreed to that, but they reserved the right, depending on what you found, to require whatever action was consistent with law. So I don't see how you can argue that it was reasonable to think that there was no reservation of remediation rights. Well, I'm not saying it was unreasonable, Your Honor. It would depend on the results. The context was this. So you're saying if the results were X, you wouldn't have to do any remediation, but X is whatever it was beforehand? Is that what you're saying? Exactly. You didn't find any change? Exactly, Your Honor. Where is that in the agreement, though? Where is that? Well, at JA34, in the language of release, it states that the stipulation and order shall not be construed as being in settlement of events regarding which the State lacks knowledge. Which paragraph are you in in the settlement? The second paragraph on the release language on J34. So the stipulation and order was not going to be construed as settlement of events regarding which the State lacks knowledge. The clear implication is if the State had knowledge, the release would be effective. Now, the context here, and this has been in the extrinsic evidence, was in 1993, the State, sua sponte, took the site off the registry of inactive hazardous waste sites because they found, based on the data, they found, based on the data, it was not a significant threat to human health or the environment. But they put it back. There was subsequent testing, and would you concede that the subsequent testing, by subsequent I mean after the 2002 settlement, showed the existence of pollutants that your client was responsible for? No, Your Honor. In fact, Frontier Technical Associates, which prepared the site work report in which the reports are throughout the records, the quarterly reports, state that the data was consistent with the historical conditions at the site because we had before the court below extrinsic evidence of data of site conditions, groundwater, and soil from the 1980s right on up through the date of the consent order. And there was no significant change, and that's what the magistrate says in his decision. But the context here, and this is also in terms of interpreting a contract, PVS went into this settlement knowing that twice the State had decided prior to litigation that the site, because of the site conditions, should not be listed as an inactive hazardous waste site, conditions the State knew about. The State had changed its mind about that. I'm sorry, Your Honor, I couldn't hear you. But twice the State had changed its mind about that, hadn't it? After, they only changed their mind in 2011, and I'd like to address that because, as Judge Rogney pointed out, that was a long period of time. Now, the Reservation of Rights said they reserved the right to require additional measures after review of the site investigation reports. What they did? That's precisely what they did. The Court below didn't agree with that, but more importantly— They didn't agree with the Reservation of Rights. It couldn't be clearer to me. More importantly, Your Honor, the point Judge Rogney was making, and that is the timing. 2002, 2003, the reports are done. 2011— Well, we don't argue laches, and the Reservation of Rights has no time fixed in it. It doesn't, but it talks about required by law. The Environmental Conservation Law, fully briefed and fully argued before the Court below, contains a statutory requirement that the DEC investigate sites annually to determine if they should be on the register or off the register. So the data that we presented, and knowing that was a qualification we negotiated into the Reservation— That was in our brief to the Court below. It was not an issue raised here. You see, my concern with this is that I raised the question of timeliness with counsel, but as he pointed out, you haven't argued this. You haven't challenged this on the ground that they waited too long. You've argued they had no right at all to ask you for this because there was this understanding that the conditions had to change, and you argue they didn't. But you don't argue laches, and you didn't argue this other statute to us in your brief. At least, I don't remember that. We pointed out to the Court below that the requirement of law was annual. But the argument to us is, you know, how are you defending this action? The District Court didn't rely on that. I believe they did, Your Honor, but— In its papers, in its opinion, it cited that statute? No, in its opinion, it did cite, however, and I'd like to address this briefly, the change in law and agreed with our position that the 2003 change made no difference. That the same constituents, arsenic, iron, cadmium, were hazardous wastes back in 1983. They're a hazardous substance in 2003. That made no difference. I don't see how we, on this appeal, would look into whether some other statute not cited to us, not cited by the District Court, limited them to one year to ask this. Now, if you have a contrary argument, I'd like to hear it, but I don't see that that's properly before us. What's before the Court, I believe, is whether or not the trial fact below made a clearly erroneous determination, and the State has never argued that. It was a question of fact the Court was resolving below when it was remanded by this Court to view extrinsic evidence for what was a reasonable interpretation. The choice of one party over another is not reversible error. That was our point on the appeal. You carved out from the release their right against any liability that results from the State's determination after review of the reports. Yes. And why isn't that what they're doing? And this is not cabined by any time limitations. I just don't believe, Your Honor, that eight years after the reports were submitted, that was the basis for the rebranding of the site. The basis was our refusal to enter into a consent order to do the very thing which had been negotiated out of the stipulation and order in 2002. You should have drafted a different reservation of rights clause of that. Counsel, I still can't understand why the State would argue for a study and not want remediation after the study is completed. It doesn't make sense. What makes sense, Your Honor, is that if that study showed different site conditions than the ones that previously existed, the ones that were released from by the terms of the release because the State had knowledge of those conditions, then they could act. As the magistrate judge said below, the new data didn't show any significant change from the old data. It's inconsistent with the structure of the settlement agreement because you had four areas where work was required, remediation was required, time limitations in some of them were imposed, but in the fifth, it was treated quite differently. The groundwater problem was not handled the way the other four were, and that suggests to me that contemplated that more work was to be done, which is why, as I read the record, the reservation of rights provision was structured the way it was. I would only say, Your Honor, in all due respect, the magistrate who lived with this for many years and was very familiar through his participation in settlement conferences, the two times he heard oral argument, the two times he had memoranda, the hundreds of exhibits he reviewed, he was confident that our interpretation was preferred. We have a lot of conscientious district judges and magistrates who put in a lot of time in cases, but at the end of the day, we've got to figure out whether he got it right. Understood, Your Honor. Thank you, Counsel. Thank you. Mr. Brody, you're reserved three minutes for rebuttal. Thank you, Your Honor. I'll start with standard of review. The standard of review is de novo, and there are three reasons for that. First, there's no issue of fact. Instead, the magistrate judge conducted a summary judgment review. At oral argument, the judge took pains to make sure and confirm that all of the extrinsic evidence was before him. That's on pages 2575 to 2579. And on that full record, the judge wrote that ambiguity would not, quote, preclude summary judgment if the extrinsic evidence were so one-sided that no reasonable fact finder could decide contrary to one party's interpretation. But this wasn't a summary judgment motion, right? It was a motion to deal with a conflict. Well, in effect, the judge conducted a summary judgment analysis. He cited summary judgment precedent, and he didn't point to any issues of fact. And, in fact, that gets to my second point. The magistrate judge did not conduct a trial, either on the papers or live. And for which side did the judge assume the facts in the light most favorable to them? That's the standard on summary judgment. And, I mean, I know exactly what you mean about the judge citing summary judgment precedent and speaking of summary judgment. But that would have required the judge to view the facts in the light most favorable to one side, and I'm not sure that that's how the judge carried out the fact finding here. Well, the judge cited undisputed evidence from the record. Well, which side do you think the judge treated the evidence most favorably to? The judge just set forth what the evidence said and then said no reasonable party could find for the State. And we think, of course, that's wrong. What do you think is the clear error in the magistrate judge's opinion? Well, exactly what Your Honor alluded to in opposing counsel's argument, namely that the judge read the reservation of rights out of the contract. And that gets to the extrinsic evidence. The important extrinsic evidence. The problem is if you're right that that's what the judge did, that this was only decided on summary judgment and that the judge said no reasonable party could find for you, if we find that error, that gets you a trial. I thought your argument here was the only possible construction of this is that we have the right to order this remediation. That's right. What it gets us is a reversal, and I think — A reversal of summary judgment usually gets — usually it's vacater and it gets you a trial. That is usual, but at the end of our reply brief we cited two cases, one of which was Compagnie Financière and the other whose name I forget. But we cite two cases where this Court flipped the result, where they said, you know what, the defendant isn't entitled to summary judgment. In fact, the plaintiff is. And what does that get you? The mandate rule doesn't — how does the mandate — how does compliance with the mandate rule accommodate a summary judgment proceeding below? All I can tell you, Your Honor, is that the Court did not make findings of fact. And when this magistrate judge was conducting a trial and was making findings of fact, he made them expressly, and we cited in our reply brief a number of — What do you want us to do? Do you want us to make findings of fact? No findings of fact are necessary. What do you want from this Court? We want a reversal, and we want the Court to hold that the magistrate judge was totally wrong. How do you say no findings of fact were necessary given the remand from this Court? Are you saying now that what this Court should have recognized is that there weren't two plausible interpretations of the contract, that there was only the one you're urging? In light of the extrinsic evidence, only one interpretation is plausible. And if the Court looks at page 1104 of the record, you'll see the key piece, the critical, critical piece of extrinsic evidence. That is, the PVS says, no, don't make us do a site investigation and corrective measures, which we don't know what they are yet. If the site investigation shows a basis for claims or remedies, then, quote, that can be the subject of discussions and negotiations between PVS and DEC. 1104 of the record. When was that dated? I'm sorry? The document you're reading from is dated when? I don't know the date. It was during the negotiations. Before or after 2002? It was before 2002 because the settlement's in 2002. Then your argument that, assuming this was not summary judgment but trial as we anticipated, that the record is insufficient as a matter of law to support the finding that the district court made as to the party's intent about the settlement? Certainly. And it is sufficient as a matter of law to support, indeed compel, a finding for the state. Thank you. Thank you both. Very lively arguments. We'll reserve decisions.